IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) ) |
| THE WHITING-TURNER CONTRACTING COMPANY, | ) ) ) |
| Defendant. | ) ) ) |

CIVIL ACTION NO.

C O M P L A I N T

JURY TRIAL DEMAND

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Clifford A. Powell, Jr., Darren L. Riley and Black employees as a class, who were adversely affected by such practices. As alleged in greater particularity in the paragraphs below, Plaintiff Equal Employment Opportunity Commission alleges Defendant, The Whiting-Turner Contracting Company, subjected Clifford A. Powell, Jr. and Darren L. Riley to a racially hostile work environment, Black employees as a class to a racially hostile work environment, and retaliated against Clifford A. Powell, Jr. and Darren L. Riley after they complained about the racially hostile work environment.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, The Whiting-Turner Contracting Company (Whiting-Turner), has continuously been a Maryland company doing business in the State of Tennessee and the City of Clarksville, and has continuously had at least 15 employees.

5. At all relevant times, Whiting-Turner has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMININSTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Clifford A. Powell, Jr. and Darren L. Riley filed charges with the Commission alleging violations of Title VII by Whiting-Turner.

7.      On August 17, 2021, the Commission issued to Whiting-Turner a Letter of Determination finding reasonable cause to believe Whiting-Turner violated Title VII with respect to Clifford A. Powell, Jr. and Darren L. Riley and invited Whiting-Turner to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.      The Commission engaged in communications with Whiting-Turner to provide them the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9.      The Commission was unable to secure from Whiting-Turner a conciliation agreement acceptable to the Commission.

10.     On September 15, 2021, the Commission issued to Whiting-Turner a Notice of Failure of Conciliation advising Whiting-Turner that the Commission was unable to secure from them a conciliation agreement acceptable to the Commission.

11.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### RACIALLY HOSTILE WORK ENVIRONMENT CLAIM FOR CLIFFORD A. POWELL, JR. AND DARREN L. RILEY

12.     Since at least on or around May 1, 2018, Whiting-Turner has engaged in unlawful employment practices at its Vandelay SPC Project worksite in Clarksville, Tennessee, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

13.     The unlawful employment practices include subjecting Clifford A. Powell, Jr. (Powell) and Darren L. Riley (Riley) to racially hostile work environment and discriminatory work conditions.

a. In May 2018, Riley was placed in a laborer position at Whiting-Turner's Vandelay SPC Project (Project) by Express Employment Professionals, LLC (Express), a temporary employment agency.

b. Riley is a Black male.

c. On September 4, 2018, Powell was also placed in a laborer position at the Project by Express.

d. Powell is a Black male.

e. Express did not provide supervision for employees placed at the Project.

f. Whiting-Turner superintendents directed all daily assignments for employees placed at the Project by Express.

g. Whiting-Turner determined the work schedule for employees placed by Express at the Project.

h. Whiting-Turner determined which employees placed by Express could work overtime.

i. Whiting-Turner maintained unilateral authority to remove employees placed by Express from the Project.

j. Whiting-Turner segregated and racially harassed Black workers at the Project, including Powell and Riley.

k. Whiting-Turner placed Powell and Riley into an all-Black sub-crew.

l. Whiting-Turner routinely required Powell, Riley, and other Black employees to work the most physically laborious assignments.

m. Whiting-Turner routinely gave Powell, Riley, and other Black employees the least desirable assignments at the Project.

n. Whiting-Turner routinely gave White employees less physically arduous assignments, such as operating forklifts and other machinery.

o. Whiting-Turner routinely allowed White employees to work in areas that were shaded or indoors, while Powell, Riley, and other Black employees routinely worked outdoors without shade.

p. Whiting-Turner routinely assigned White employees to supervisory positions over Powell, Riley, and other Black sub-crews.

q. There were qualified Black employees available to be appointed to supervisory positions.

r. Whiting-Turner appointed a White crew leader to supervise Powell and Riley's all-Black sub-crew.

s. This White crew leader repeatedly referred to Powell and Riley as "boy."

t. The same White crew leader also frequently told Powell and Riley to, "get ya black asses back to work."

u. The same White crew leader also frequently referred to Powell and Riley as "m------f-----" and "you."

v. Riley asked the crew leader to stop and complained about it to the assistant superintendent.

w. The assistant superintendent told Riley to "let it go" and that the White crew leader was "old-fashioned."

x. The assistant superintendent told Riley that he would talk to the White crew leader, but the behavior by the White crew leader continued unabated.

y. The White crew leader generally refused to refer to Powell and Riley by their names.

z. Whiting-Turner later appointed a new White crew leader to supervise the all-Black sub-crew to which Powell and Riley were assigned.

aa. The new White crew leader also treated Powell and Riley in a demeaning and disrespectful manner while directing their work.

bb. Almost every porta potty at the worksite was covered in racially offensive graffiti and epithets.

cc. The graffiti included, but was not limited to, references to the KKK, White Power, demands for Black people to "go back to Africa," and the N-word.

dd. Powell and Riley were continually exposed to the racially offensive graffiti described above while at the Project.

ee. The racial harassment described above unreasonably interfered with the work performance of Powell and Riley.

ff. Whiting-Turner did not provide Powell or Riley with a copy of its anti-discrimination policy.

gg. Whiting-Turner did not review its anti-discrimination policy with Powell or Riley.

hh. Whiting-Turner did not train Powell or Riley on how to report racial harassment or discrimination to Whiting-Turner.

ii. Despite not being provided a copy of Whiting-Turner's anti-discrimination policy or being trained on how to report racial harassment, Powell and Riley nevertheless complained to Whiting-Turner about the racial discrimination and harassment multiple times.

jj. Whiting-Turner did not investigate Powell and Riley's complaints while they worked at the Project.

14. The unlawful employment practices complained of in paragraph 13 above were intentional.

15. The unlawful employment practices complained of in paragraph 13 above were done with malice or with reckless indifference to the federally protected rights of Powell and Riley.

## RACIALLY HOSTILE WORK ENVIRONMENT CLAIM FOR BLACK EMPLOYEES AS A CLASS

16. Since at least on or around May 1, 2018, Whiting-Turner has engaged in unlawful employment practices at its "Vandelay SPC Project" worksite in Clarksville, Tennessee, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

17. The unlawful employment practices include subjecting Black employees as a class to racially hostile work environment and discriminatory work conditions.

a. The Commission re-alleges and incorporates by reference the allegations set forth in the paragraphs above.

b. Black employees placed at the Project by Express were employees of Whiting-Turner.

c. Express did not provide supervision for employees placed at the Project.

d. Whiting-Turner superintendents directed all daily assignments for employees placed at the Project by Express.

e. Whiting-Turner determined the work schedule for employees placed by Express at the Project.

f. Whiting-Turner determined which employees placed by Express could work overtime.

g. Whiting-Turner maintained unilateral authority to remove employees placed by Express from the Project.

h. Whiting-Turner segregated and racially harassed Black workers as a class at the Project.

i. Black employees as a class were often assigned as general laborers and given the most physically demanding or least desirable assignments.

j. Black employees as a class were generally not allowed to operate machinery, such as forklifts, even when qualified.

k. At least one Black employee placed with Whiting-Turner by Express as a licensed forklift operator was instead assigned by a White supervisor as a general laborer.

l. Even when the normal forklift operator did not arrive at work, the Black employee's request to fill-in was denied.

m. White employees were frequently allowed to use buggies or other transport vehicles to transverse the site, while Black employees were generally made to walk.

n. Qualified Black employees as a class were rarely placed in crew lead or supervisory positions.

o. At least one qualified Black employee, who was not offered a crew lead position while working under Whiting-Turner, was made a crew lead when he was placed under new supervision with a sub-contractor at the same work site.

p. Black employees as a class were rarely promoted by Whiting-Turner or retained as full-time employees.

q. Whiting-Turner generally appointed White crew leaders to supervise Black sub-crews.

r. One White crew leader repeatedly referred to Black employees, in addition to Powell and Riley as alleged in paragraph 13 above, as "boy."

s. The same White crew leader frequently told Black employees, in addition to Powell and Riley as described in paragraph 13 above, to, "get ya black asses back to work."

t. Even when Black employees asked the White crew leader to stop and complained about it to management, the behavior continued unabated.

u. Almost every porta potty at the worksite was covered in racially offensive graffiti and epithets.

v. The graffiti included, but was not limited to, references to the KKK, White Power, demands for Black people to "go back to Africa," and the N-word.

w. Black employees as a class were continually exposed to the racially offensive graffiti described above while at the Project.

x. The racial harassment described above unreasonably interfered with the work performance of Black employees as a class.

y. Whiting-Turner did not provide employees placed at the Project by Express with a copy of its anti-discrimination policy.

z. Whiting-Turner did not review its anti-discrimination policy with employees placed at the Project by Express.

aa. Whiting-Turner did not train employees placed at the Project by Express on how to report racial harassment or discrimination to Whiting-Turner.

bb. Despite not being provided a copy of Whiting-Turner's anti-discrimination policy or being trained on how to report racial harassment, multiple Black employees nevertheless complained to Whiting-Turner about the racial discrimination and harassment multiple times.

cc. Whiting-Turner did not properly investigate the complaints.

18. The unlawful employment practices complained of in paragraph 17 above were intentional.

19. The unlawful employment practices complained of in paragraph 17 above were done with malice or with reckless indifference to the federally protected rights of Black employees as a class.

RETALIATION CLAIM

20. Since at least September 2018, Whiting-Turner engaged in unlawful employment practices in violation of Section 704 of Title VII, 42 U.S.C. § 2000e-3(a).

21. The unlawful employment practices include discharging Powell and Riley in retaliation for their complaint about Whiting-Turner's racial harassment and discrimination.

a. The Commission re-alleges and incorporates by reference the allegations set forth in paragraphs 13 and 17 above.

b. Riley and Powell complained to Whiting-Turner about the crew leader referring to them as "boy, "you," and "m-----f-----" and other offensive conduct because of their race.

c. Riley and Powell complained to Whiting-Turner about the crew leaders speaking to them in a demeaning and offensive manner because of their race.

d. Riley and Powell objected to the supervisor about the racially hostile work environment.

e. On or about the morning of September 20, 2018, Powell and Riley complained

publicly during a team meeting with a member of management for Whiting-Turner that Blacks were being offensively treated and they raised various issues of race discrimination.

      f.     At the end of the same workday, Whiting-Turner terminated Powell and Riley's assignments and removed them from the worksite.

22.     The unlawful employment practices complained of in the paragraph 21 above were intentional.

23.     The unlawful employment practices complained of in the paragraph 21 above were done with malice or with reckless indifference to the federally protected rights of Powell and Riley.

24.     The effect of the practices complained of in the paragraphs above has been to deprive Darren L. Riley, Clifford A. Powell, Jr., and Black employees as a class of equal employment opportunities and otherwise adversely affect their status as employees because of their race or engagement in protected activity.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Whiting-Turner, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice that violates Title VII.

B.     Order Whiting-Turner to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black employees, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Whiting-Turner to make whole Darren L. Riley and Clifford A. Powell, Jr. by providing appropriate backpay with prejudgment interest, in amounts to be determined at

trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

      D.      Order Whiting-Turner to make whole Darren L. Riley, Clifford A. Powell, Jr., and Black employees as a class by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the paragraphs above, including relocation expenses and job search expenses, in amounts to be determined at trial.

      E.      Order Whiting-Turner to make whole Darren L. Riley, Clifford A. Powell, Jr., and Black employees as a class, by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in the paragraphs above, including emotional pain, suffering inconvenience, and loss of enjoyment of life, in amounts to be determined at trial.

      F.      Order Whiting-Turner to pay Darren L. Riley, Clifford A. Powell, Jr., and the Black employees as a class punitive damages for its malicious and reckless conduct described in the paragraphs above, in amounts to be determined at trial.

      G.      Grant such further relief as the Court deems necessary and proper in the public interest.

      H.      Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

      Respectfully submitted,

      GWENDOLYN YOUNG REAMS
      Acting General Counsel

      */s/ Faye A. Williams*
      FAYE A. WILLIAMS

Regional Attorney
TN Bar No. 11730

*/s/Amy F. Black*
AMY F. BLACK
Supervisory Trial Attorney
TN Bar No. 016102

*/s/ Craig Martin Smith*
CRAIG MARTIN SMITH
Trial Attorney
CA Bar No. 273800

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
1407 Union Avenue, Suite 900
Memphis, TN 38104
Telephone (901) 544-0111
Telephone (901) 685-4606
craig.smith@eeoc.gov
amy.black@eeoc.gov

13