UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>THE WHITING-TURNER CONTRACTING COMPANY,<br><br>    Defendant. | Case No. 2:21-cv-00753<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

### MEMORANDUM OPINION AND ORDER

This memorandum order addresses Plaintiff Equal Employment Opportunity Commission's motion to quash one paragraph of a subpoena issued by Defendant The Whiting-Turner Contracting Company to non-party Express Employment Professionals. (Doc. No. 29.) Whiting-Turner has responded in opposition (Doc. No. 33), and the EEOC filed a reply (Doc. No. 41). For the reasons that follow, the motion to quash (Doc. No. 29) will be granted in part and denied in part.

**I.    Background**

The Equal Employment Opportunity Commission (EEOC) initiated this action on September 30, 2021, alleging that Defendant The Whiting-Turner Contracting Company (Whiting-Turner) engaged in employment practices at its Vandelay SPC Project worksite in Clarkesville, Tennessee, that violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. (Doc. No. 1.) The EEOC's claims arise out of charges filed by Clifford A. Powell,

Jr.[1], and Darren L. Riley alleging that they were subjected to a racially hostile work environment and racially discriminatory working conditions when they were placed in laborer positions at the Vandelay SPC Project construction site by non-party temporary employment agency Express Employment Professionals (Express). After finding reasonable cause to support Powell and Riley's charges, the EEOC invited Whiting-Turner to engage in informal conciliation efforts. (*Id.* at ¶ 7.) Ultimately, the EEOC "was unable to secure from Whiting-Turner a conciliation agreement acceptable to the Commission" and initiated this lawsuit. (*Id.* at ¶ 9.) Whiting-Turner asserts that the EEOC "reached a settlement with [Express] as a result of its conciliation efforts under which [Express] paid Powell and Riley damages and compensation for the same claims the [EEOC] now asserts against Whiting-Turner." (Doc. No. 33.)

The EEOC's allegations against Whiting-Turner begin in May 2018, when Riley was assigned by Express to work as a laborer at the Vandelay Project. Powell was assigned to a laborer position at the Vandelay Project in September 2018. The EEOC alleges that Express did not supervise the workers it placed at the Vandelay Project and that Whiting-Turner directed daily assignments and work schedules, including authorizing overtime, and had the authority to remove employees from the project. (*Id.*)

Riley and Powell are Black men. The EEOC alleges that Whiting-Turner segregated Riley, Powell, and other Black employees by assigning them to all-Black crews that worked under white supervisors; required Black employees to perform more physically demanding and less-desirable work assignments than those assigned to white employees; and did not allow qualified Black employees to work in supervisory positions. The EEOC further alleges that white crew leaders

---

[1] Powell's charge was initially filed with the Tennessee Human Rights Commission and later transferred to the EEOC. (Doc. No. 33.)

used racially derogatory language when speaking to Black employees and that the worksite's porta-potties were "covered in racially offensive graffiti and epithets." (*Id.* at ¶ 13.bb.) The EEOC alleges that Whiting-Turner did not provide employees with an anti-discrimination policy or instruct them how to register complaints of discrimination. The EEOC further alleges that, when Riley and Powell reported their experience of discrimination in a public meeting, Whiting-Turner retaliated against them by removing them from their positions on the same day.

Based on these allegations, the EEOC brings claims charging a racially hostile work environment under Title VII on behalf of Riley and Powell and on behalf of a class of Black employees. The EEOC also claims retaliation under Title VII.

In the course of discovery, Whiting-Turner notified the EEOC that it intended to serve a subpoena on Express for the production of certain documents. (Doc. No. 29-2.) Paragraph 13 of Whiting-Turner's subpoena directs Express to:

> Produce any and all documents, property, and ESI which relate to any charges of discrimination filed against [Express] with any federal, state or local EEO agency (including the Equal Employment Opportunity Commission and the Tennessee Commission on Human Rights) in connection with the Vandelay Project. Your response should include, but not be limited to, charges and complaints, statements of position, correspondence, notes, settlement and/or conciliation agreements (including drafts), [and] responses to requests for information.

(Doc. No. 29-3.)

The EEOC objected to Paragraph 13 on grounds that Title VII prevents disclosure of information about conciliation proceedings under 42 U.S.C. § 2000e–5(b). Express has not taken a position on Paragraph 13 in anticipation of the Court's ruling on the EEOC's motion. (Doc. No. 33-1.)

## II. Legal Standard

Federal Rule of Civil Procedure 45(d) provides that, when presented with a timely motion, a court "must quash or modify a subpoena that[,]" among other grounds, "requires disclosure of

3
Case 3:21-cv-00753    Document 105    Filed 08/08/22    Page 3 of 12 PageID #: 1650

privileged or other protected matter, if no exception or waiver applies . . . ." Fed. R. Civ. P. 45(d)(3)(A)(iii). The party moving to quash a subpoena bears the burden of proof. *See In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013). "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." 9A Charles Alan Wright and Arthur R. Miller, et al., Federal Practice and Procedure § 2549 (3d ed.); *see also United States v. Llanez-Garcia*, 735 F. 3d 483, 498 (6th Cir. 2013).

**III.      Analysis**

The EEOC moves to quash Paragraph 13 of Whiting-Turner's subpoena to Express based on provisions of Title VII that prioritize the resolution of discrimination through informal conciliation over litigation. Specifically, the EEOC asks the Court to quash Whiting-Turner's subpoena regarding "the portions of Paragraph 13 that request[] information about 'informal endeavors,' if any between the Commission and Express Services" under 42 U.S.C. § 2000e–5(b), which establishes a prohibition on the disclosure of informal conciliation efforts. (Doc. No. 29-1.) The EEOC further argues that the requested conciliation-related documents are not relevant to any claims or defenses in this action because conciliation materials are inadmissible as evidence "without the written consent of the persons concerned," which the EEOC has not given. 42 U.S.C. § 2000e–5(b). (*Id.*) In response, Whiting-Turner argues that the conciliation privilege established by § 2000e–5(b) does not apply to "purely factual material" obtained during the informal conciliation process. (Doc. No. 33.) Whiting-Turner asserts that "the majority" of the information it requests in Paragraph 13, including the final conciliation agreement between Express and the EEOC, falls in that category and is therefore not subject to the statutory conciliation privilege. (*Id.*)

Whiting-Turner does not challenge the EEOC's standing to move to quash its third-party subpoena to Express.

### A. The Confidentiality Provision Established By § 2000e–5(b)

Title VII "sets out a detailed, multi-step procedure through which the [EEOC] enforces the statute's prohibition on employment discrimination." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 483 (2015). As part of that procedure, Title VII directs that, when a person files a charge of discrimination with the EEOC and the EEOC determines that there is "reasonable cause to believe that the charge is true, the [EEOC] shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(b). This statutory directive reflects that, "[i]n pursuing the goal of 'bring[ing] employment discrimination to an end,' Congress chose '[c]ooperation and voluntary compliance' as its 'preferred means.'" *Mach Mining*, 575 U.S. at 486 (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 228 (1982) (alterations in original)). "Indeed, it is apparent that the primary role of the EEOC is to seek elimination of unlawful employment practices by informal means leading to voluntary compliance." *Hutchings v. United States Indus.*, 428 F.2d 303, 309 (5th Cir. 1970). The language Congress employed in establishing its preference for resolution through conciliation is "mandatory, not precatory." *Id.*

"However, the prospect of disclosure or possible admission into evidence of proposals made during conciliation efforts would tend to inhibit the kind of free and open communication necessary to achieve unlitigated compliance with the requirements of Title VII." *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 881 (5th Cir. 1981). Addressing that risk, Title VII requires that "[n]othing said or done during and as part of such endeavors may be made public by the [EEOC], its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned." 42 U.S.C. § 2000e–5(b). Further, "[a]ny person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both." *Id.*

Courts applying Title VII's confidentiality provision have distinguished between materials reflecting what was "said or done" during conciliation efforts and "purely factual information about the merits of a charge, gleaned by the [EEOC] during its conciliation endeavors," finding the second category of information not subject to the provision.[2] *Branch*, 638 F.2d at 881; *see also EEOC v. Parker Drilling Co.*, No. 3:13-cv-00181-SLG, 2014 WL 5410661, at *4 (D. Alaska Oct. 22, 2014) ("Only a very broad reading of 'said or done' would permit the EEOC to withhold under § 200e-5(b) factual material simply because it was produced during the conciliation process."); *EEOC v. W. Customer Mgmt. Grp., LLC*, No. 3:10CV378/MCR/CJK, 2014 WL 12479614, at *3 (N.D. Fla. Jan. 21, 2014) (finding that "purely factual material" is not precluded from disclosure); *Trujillo v. Bd. of Educ. of Albuquerque Pub. Sch.*, No. CV 02-1146 JB/LFG, 2007 WL 9709783, at *2 (D.N.M. June 25, 2007) (noting distinction between things "'said or done during and as part of' informal conferences and conciliation efforts" and purely factual information and finding no support for position that the statute "prohibits [disclosure of] all information and documents contained in an EEOC file"). Conciliation materials that are prohibited from disclosure include "proposals and counter-proposals of compromise made by the parties during [conciliation efforts]." *Branch*, 638 F.2d at 881; *see also Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1477 (5th Cir. 1992) (finding distinction between "factual material related to the merits of the charge and proposals and counter-proposals of compromise made by the parties during the EEOC's efforts to conciliate").

---

[2] The EEOC's regulations addressing the confidentiality provision provide that "[f]actual information obtained by the [EEOC] during such informal endeavors . . . will be considered by the [EEOC] as obtained during the investigatory process" and, therefore, not covered by § 2000e-5(b). 29 C.F.R. § 1601.26(b).

## B. Application of the Confidentiality Provision to Whiting-Turner's Subpoena

It appears that, having advanced this discovery dispute through informal resolution processes and thorough briefing, the parties largely agree as to its resolution. Specifically, neither party appears to dispute that § 2000e–5(b) applies to conciliation materials and does not apply to purely factual material.[3] Accordingly, the Court will deny the EEOC's motion to quash as it applies to "purely factual information about the merits of a charge, gleaned by the [EEOC] during its conciliation endeavors." *Branch*, 638 F.2d at 881. The Court will grant the motion as it applies to things "said or done during and as part of" conciliation, including "proposals and counter-proposals of compromise made by the parties." *Id.*

### 1. Final Conciliation Agreement Between the EEOC and Express

The parties disagree as to whether a final conciliation agreement reached between the EEOC and Express, if one exists, should be treated as conciliation materials or a purely factual document. The Court finds persuasive reasoning in a line of cases distinguishing the confidentiality provision's application to oral agreements reached in the conciliation process from its application to finalized written conciliation agreements. *See E.E.O.C. v. Philip Servs. Corp.*, Civil Action No. H-09-1625, 2010 WL 724418, at *5 (S.D. Tex. Feb. 25, 2010); *Cooper v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, No. CIV.A. 01-1560, 2004 WL 1208517, at *1 (E.D. La. June 1, 2004). In *Philip Services*, the court considered whether the EEOC could disclose conciliation information in support of an action to enforce oral agreements reached during the

---

[3] Other courts have found the prohibition on disclosure to be imposed only on "the Commission, its officers or employees . . . ." 42 U.S.C. § 2000e-5(b). *See, e.g., EEOC v. West Customer Mgmt. Group, LLC*, Case No. 3:10cv378/MCR/CJK, 2014 WL 12479614, at *3 (N.D. Florida Jan. 21, 2014); *EEOC v. Phillip Servs. Corp.*, Civil Action No. H-09-1625, 2010 WL 724418, at *3 (S.D. Texas Feb. 25, 2010) ("Notably, the prohibition against public disclosure specifically applies only to the EEOC, its officers, and its employees."). Because Whiting-Turner does not make this argument, the Court will not consider it.

conciliation process. *Philip Servs. Corp.*, 2010 WL 724418 at *3. In granting Philip Services' motion to dismiss the EEOC's claims, the court found that § 2000e–5(b) "unequivocally forbids the EEOC from using information from the conciliation negotiations for any purpose in subsequent proceedings. The plain language of the statute makes it clear that there are no exceptions." *Id.* at *1. The court distinguished *EEOC v. Safeway Stores, Inc.*, a case relied upon by the EEOC, in which the Fifth Circuit held that the EEOC could bring an action in federal court to enforce a final conciliation agreement. 714 F.2d 567, 575 (5th Cir. 1983). The Fifth Circuit found in *Safeway Stores* that "[i]t would be manifestly illogical to recognize that Congress had selected conciliation as the primary means of achieving compliance with [Title VII], and at the same time to interpret the statute so that employers and unions are free to breach such agreements with impunity" by precluding enforcement actions. *Id.*

As the *Philips Services* court noted, when considering the finalized conciliation agreements at issue in *Safeway Stores*, the Fifth Circuit "was not concerned with what was 'said or done' during conciliation. In fact, the court did not mention the confidentiality provision at all." Instead, the Fifth Circuit reasoned that, "'[s]o long as regular contract rules are satisfied and so long as enforcement of the agreement does not conflict with the parties' individual rights or the purposes of Title VII, the contract is specifically enforceable.'" 2010 WL 724418, at *4. The finalized conciliation agreements did not invoke the confidentiality provision and, thus, their disclosure in an enforcement action did not conflict with the purposes of Title VII.

In contrast, the *Philips Services* court found, "filing a lawsuit to enforce an oral conciliation agreement directly violates both halves of the Title VII confidentiality provision: it makes public what was said and done in the conciliation process and it uses that information in a subsequent proceeding." *Id.* at *5. The court found that, "[w]ithout making public or using what was 'said or

done' during the conciliation conference, the EEOC cannot prove, in this proceeding, the existence of the alleged oral contract." *Id.* The critical distinction from *Safeway Stores* was that "[t]he terms of each written agreement were provable by reference to the document itself"—the finalized conciliation agreement—"without revelation of 'proposals and counter-proposals of compromise made by the parties' during conciliation efforts." *Id.*

Similar reasoning applied in *Cooper v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College*, in which the court found that § 2000e–5(b)'s confidentiality provision did not prohibit disclosure of a final conciliation agreement. 2004 WL 1208517, at *1. The court found that a final conciliation agreement "is not something said or done during the conciliation process. Rather, it is the goal towards which all other conciliatory efforts were aimed, the end to which things were said or done. While it may be the culmination of a successful conciliation process, it is not itself part of that process." *Id.* In reaching this conclusion, the court distinguished a line of cases offered by the defendant employer in support of its argument against disclosure, finding that every cited case addressed "not whether the agreement, if one was actually reached, is admissible but whether those decisions and deliberations leading up to the agreement are admissible." *Id.* (distinguishing *Olitsky v. Spencer Gifts, Inc.*, 842 F.2d 123 (5th Cir. 19880; *Branch*, 638 F.2d at 873, and *Jimenez v. Paw-Paw's Camper City, Inc.*, No. CIV. A. 00-1756, 2001 WL 1445027 (E.D. La. Nov. 14, 2001)). The court compared the confidentiality provision to the common law deliberative process privilege, noting that, while a deliberative process privilege "shields form disclosure those documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated . . . [i]t does not, however, shield from disclosure the final governmental decision or policy." *Id.* at *2.

The EEOC cites one contrary decision to support its argument that the final agreement may not be disclosed under § 2000e–5(b). In *EEOC v. Olsten Staffing Services Corp.*, the court rejected *Cooper* on grounds that, "[a]lthough [its] reasoning could apply to an agreement reached between the parties in this case, I find it inapposite to a conciliation agreement reached between the EEOC and a third party and inconsistent with the purpose of the non-disclosure statutes." 627 F.Supp.2d 972, 975 (W.D. Wisc. 2009). The *Olsten Staffing* court cited no authority for its conclusion that § 2000e–5(b)'s confidentiality provision applies differently to conciliation efforts between the EEOC and an opposing party in a particular case than it does to conciliation efforts between the EEOC and a third party, and this Court has not discovered any. In other contexts, courts regularly find no difference in application of the confidentiality provision's mandate to parties and non-parties. *See, e.g.*, *EEOC v. Philip Serv. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) ("Title VII thus prohibits use of conciliation material in subsequent litigation, even by parties to the proceeding."); *Branch*, 638 F.2d at 881 (holding that "disclosure of conciliation materials, even to the parties, would discourage negotiated settlement and frustrate the intention of Congress"). More importantly, the statute's plain language makes no such distinction, and courts "will not presume that Congress intended there to be an exception to or limitation of the meaning of the statute when it is unambiguous." *Philip Serv. Corp.*, 635 F.3d at 166.

The record does not establish that any final conciliation agreement was entered into between the EEOC and Express. If such a finalized document exists, it should not be treated as conciliation material subject to the confidentiality provision of § 2000e–5(b) for purposes of the EEOC's motion to quash. The Court makes no finding as to any objections to producing a final conciliation agreement that Express may make on its own behalf.

### 2. Whiting-Turner's "Substantial Need" Argument

As a secondary argument, Whiting-Turner asserts that its "substantial need for the information sought" in Paragraph 13 "outweighs the [EEOC's] interest in nondisclosure, which can be mitigated by various confidentiality measures" and that the confidentiality provision should not apply to any of the requested materials. (Doc. No. 33.) In support of its argument, Whiting-Turner cites a number of cases in which courts have weighed a party's need for information against other types of evidentiary privileges. (*Id.*) Those cases are unpersuasive in light of § 2000e–5(b)'s unambiguous terms, which do not provide for any such weighing of interests.[4] *See EEOC v. Mach Mining, LLC*, No. 3:11-cv-00879-JPG-PMF, 2012 WL 3800787, at *2 (S.D. Illinois July 13, 2012) (rejecting EEOC's similar argument by analogy to other privileges and finding "a fundamental difference between the privileges cited and the statutory provision at issue in this case" which "only provides for one, precise method of waiver"). Again, the Court "will not presume that Congress intended there to be an exception to or limitation of the meaning of the statute when it is unambiguous." *Philip Serv. Corp.*, 635 F.3d at 166. Whiting-Turner's interest in the subject information does not factor into the application of § 2000e–5(b).

### IV. Conclusion

For these reasons, the Court GRANTS IN PART AND DENIES IN PART the EEOC's motion to quash Paragraph 13 of Whiting-Turner's subpoena to Express. The motion is GRANTED as it applies to any conciliation materials and DENIED as it applies to any purely

---

[4] Whiting-Turner cites the Fifth Circuit's rejection of an employer's argument that information protected by § 2000e-5(b) "would be valuable to impeach" the plaintiff's credibility on grounds that "[t]his possibility is insufficient to overcome the congressional policy embodied in section [2000e-5(b)]." *Branch*, 638 F.2d at 880. The Fifth Circuit's rejection of such a weighing of interests does not support Whiting-Turner's argument that similar weighing is appropriate in this case.

factual materials, as those terms are defined in this Memorandum Opinion and Order. The motion is DENIED as it applies to any finalized conciliation agreement reached between the EEOC and Express.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge